Good morning, Your Honors. May it please the Court and Counsel. My name is Todd Grover. I represent the appellant, Byron Branch. As the Court is aware, this is an appeal from the denial of Mr. Branch's motion for relief under 18 United States Code. I'm sorry, Your Honor. This is an appeal from the denial of Mr. Branch's motion for relief under 18 United States Code 2255. Mr. Branch has raised four issues on appeal. Three of those are certified. One is not. I intend to address this morning two of the certified issues. Your Honors, the issue I want to address first, or I should say that the issues that I'd like to address, are those that contributed directly to Mr. Branch's current sentence of life imprisonment. Those are, first, ineffective assistance of counsel by trial counsel in failing to raise. And what was the second? I'm sorry. No, he doesn't get this. I'm sorry, Your Honor. The second is the denial of Mr. Branch's Sixth Amendment right to conflict-free counsel. These both contributed to his conviction for a conspiracy to distribute crack cocaine or cocaine base that led to a life sentence. Your Honor, with respect to Count 1, the crack cocaine conspiracy count, Mr. Branch alleges that he was denied the effective assistance of trial counsel because his trial counsel failed to raise the best possible defense available to him at the time, which was a diminished capacity defense. It would be helpful to me to explain. I understand the argument about why it was an effective assistance. She misread Desha's order, and that's possible. But I'm having a very hard time understanding how a diminished capacity defense would apply to the particular crimes and facts here. Sure, Your Honor. As Judge Haggerty, the trial court judge, correctly instructed the jury, when the jury was considering that count as well as the other conspiracy count, which was a money laundering conspiracy, the jury had to find some specific intent. That is, with respect to the drug case, that a couple of different things, that Mr. Branch had the specific intent to enter into this unlawful conspiracy or agreement to distribute controlled substances in the first place. And then the court, the trial court, also tasked the jury with determining what Mr. Branch agreed to enter into in terms of the scope of the conspiracy. And additionally, the jury was asked to determine the amount of drugs that were reasonably foreseeable to Mr. Branch. And it's the latter determination that I think is the most critical in this case. What the evidence in this case showed and what the government demonstrated at trial was that there were a large number of people, I think there were 25 named defendants in this indictment, but others, involved in the distribution of drugs. And the government presented evidence that some of this distribution occurred in Mr. Branch's presence, but most outside of his presence. But the government nonetheless argued, and it was their theory at trial, that Mr. Branch was aware of these others who were distributing drugs, and that those drug quantities were therefore reasonably foreseeable to him, and the jury was tasked with determining the amount of drugs that were reasonably foreseeable to him. And the amount of drugs was necessary to be tried to the jury because it determined the sentence, the life sentence? That's correct. This case was tried in 2001 in the wake of the United States Supreme Court's decision in New Jersey v. Prendy, and the drug quantity was submitted to the jury for their determination on both the guideline determination, but then also statutory, mandatory minimum sentencing under 21 U.S.C. 841. Well, that's very clarifying because I did not understand any of that from your briefs in terms of why this all mattered. I apologize for that, Your Honor. But in any event, so that was the critical decision that was before the jury, is how much drug quantity should we attribute to this man. And, of course, the problem in this case is that the jury, given what they were given at trial, naturally presumed that this was a man of normal intelligence and foresight when, demonstrably, he was not. This is a gentleman. And the available expert evidence, psychiatric or psychological expert evidence, was not put on at all. That's correct, Your Honor. And as I've laid out in the brief, trial counsel, I believe, misinterpreted one of the trial court's original rulings regarding addressed offense as excluding the possibility of putting on any. So the problem isn't only the spec thing. It's also that what was available wasn't put on. Correct. There was no mental state evidence introduced to the jury. The jury heard nothing about Mr. Branch's diminished mental capacity, either from ample friends and family who were available to testify to what they observed. Also, right psychologists who evaluated Mr. Branch and those folks were not called to testify. What they did hear was what pretty much the facts of the case. They know somebody was running the operation, and maybe even more capacity than he had. Well, Your Honor, in the first instance, I believe that the judge, in the first    instance, I believe that the diminished capacity would be relevant to the jury's initial determination of whether he was indeed running that operation. And certainly that was the government's position at trial, and I anticipate that's the government's position today. But Mr. Branch, I think, if the diminished capacity evidence is viewed in light of the rest of the evidence in the case, I think a jury could have pause when considering the question whether he was indeed the leader and organizer that the government suggests. But I think more importantly, as I've suggested earlier, the diminished capacity evidence causes most concern when the jury gets to the point where they have to determine what was the amount of drug reasonably foreseeable to Mr. Branch and for which he ought to be sentenced. Because then we're talking about not just the activities that Mr. Branch is demonstrably involved in, but the activities of his co-defendants, things that took place outside of his immediate presence, and how much could he have reasonably foreseen that other people were doing. And I think that's the difficulty with Mr. Branch. He's ---- Now, does any of the proffered evidence or any of the evidence that you presented on the 2255 go directly to that question? I don't recall that it does. I'm not sure I understand your question, Your Honor. Does it go directly to the question of whether, assuming that he was cognitively and knowingly involved in a rather large drug conspiracy, he was capable of appreciating the breadth of that conspiracy? Your Honor, yes and no. I would argue yes in the sense that the psychologist and the neuropsychologist who evaluated Mr. Branch prior to trial both observed deficits in his ability to learn and to recall detail. His life partner, Carlotta Franklin, was prepared to testify, and you have affidavits and excerpts of record, that Mr. Branch was forgetful to the point that he couldn't pay bills. He was at least tangentially involved in a business. His uncle had bequeathed to him, and she, that is the life partner, basically had to run his portion of the business for him because he just had no ability to function with abstract detail, if you will. So, you know, he can hold a conversation, as you and I are today, but in terms of planning for the future ---- Well, he apparently ---- see, that's the problem. It's a very fine-cut problem because he did ---- My first reaction similarly to Judge Farris's was we know that he did plan for the future, and he ran at least some portion of a rather large drug conspiracy. So it can't ---- insofar as the evidence is supposed to go to the fact that he can't do that, it's just belied by the facts. The question becomes whether there's some sub-issue as to which he could have been shown inadequate. Well, Your Honor, I ---- May I just add to that? Your own investigator said the case was so strong against your client that he had virtually no chance of acquittal. Yes, Your Honor. I'm going to run out of time. Let's take a ---- this case, unlike the last one, probably deserves a little more time than we allotted to it. So go ahead. All right. Thank you, Your Honor. Let me ask ---- let me answer both questions. I thought they were ---- they went with each other. Take them separately, please. Thank you. Thank you, Your Honor. Your Honor, I would take issue with your ---- I hesitate to call it an assumption, but the premise of your question, which is that Mr. Branch did run this overarching conspiracy. I wasn't really saying he was running the whole conspiracy. He was running some aspect of it. He was telling people he was making plans for transporting drugs and involving other people in that task. There's certainly evidence, Your Honor, in the record that he was doing that. But I think the jury should have been allowed to consider his mental defects in terms of how much of that planning he was really doing. Now, it is certainly the government's position, and this is not a sufficiency of the evidence argument, and there was ---- I should say that there was testimony from some cooperating co-defendants in this case that Mr. Branch did exercise the kind of managerial role that you are suggesting. But the extent of that was in question at the trial and I think is still in question today, and I think the jury should have been, in the first instance, allowed to consider Mr. Branch's mental state when they were trying to determine, as they had to, the extent of his managerial role, Your Honor. The cognitive evidence really ---- I assume you're talking largely about the cognitive evidence, not other mental problem evidence. Yes. And my recollection is that the net bottom line was he was of lower average intelligence. Is that not right? That is, Your Honor. I mean, it was a kind of a potpourri of things. He was ---- he's not mentally retarded, but, right, the psychologist and the neuropsychologist both determined he was of low average intelligence. But then also what the ---- what we referred to as the SPECT scan revealed after the fact, that is after the trial but before sentencing, revealed that he had permanent brain damage in certain areas of his brain and that caused some other learning disabilities and some other cognitive defects that I discussed earlier to include problems ---- And finally, with respect to the girlfriend or life partner testimony, the lawyer had a very definite explanation for why he didn't call her. Yes. And the question is why that isn't simply in ---- as an IAC issue, simply in the category of permissible strategy. Your Honor, and the government makes that argument. The problem with that argument is that under Strickland, when we look at a lawyer's performance, that performance, even if it's reasoned, is judged according to objective reasonableness. It's not enough that the trial attorney simply has a subjective reason for it, here's why I didn't do that. The question is would a reasonable defense attorney acting at that time and in that place think that this course of conduct was the appropriate one? And what the lawyer said in his affidavit in this case simply does not bear scrutiny. If the Court will recall, what the lawyer said was that he didn't call the girlfriend because he was afraid that a prior bad act that Mr. Branch supposedly committed with respect to his girlfriend would somehow come into evidence, that is the prosecutor would be able to elicit from the girlfriend, understand, hey, isn't it true that Mr. Branch did this horrible thing to you five years ago? Well, there's more than one instance, wasn't there? There were two. I think that's right. I think that's right from the affidavit, Your Honor. There are a couple of instances. But the problem with that is this Court is aware, you know, is that under the Federal Rules of Evidence, I think it's 404B, prior bad acts don't come in to prove character. And Branch didn't testify to him. No, it probably did not, Your Honor. And the thing that you – I think the burden, at least from the way I see it, there are certain things that you – if you know as a lawyer, you know you can't ask, but you know it's a fact and you know the person on the stand knows it's a fact and you can let that person know that you know it's a fact and you can move from there to where you want to go. And that's the problem with how considering what you're talking about, that the lawyer made a reasoned decision and it might have been a wise decision. Right. Because he was trying to paint your client as a person who found himself in a box. And if somehow the jury would know that, wait a minute, here's this kind gentleman who's had some other similar experiences. Would somebody be supposed to laugh? I take your point, Your Honor, and I guess I have two brief responses to it. The first is, with respect, I believe that counsel could have avoided the problem. Counsel could have called the girlfriend ahead of time out of the presence of the jury, put on an offer of proof, and essentially gotten a pretrial ruling, if you will, from the trial court that prior bad acts are not coming in. And if he thought that he needed to get into diminished capacity evidence through the girlfriend, he could have proceeded in that fashion. The second response, of course, is that we must not forget the diminished capacity evidence not hinged materially on the girlfriend's testimony alone. There are a whole host of friends and family members who could bear witness to Mr. Branch's diminished mental capacity. I think you should wrap up. I have one last question, just for clarification. And then I have one. Okay. And then Judge Gelsen has one. Just to be clear, the diminished capacity argument goes to the one conspiracy. Well, Your Honor, I think it would apply to count two, which is the money laundering conspiracy as well, for the reason that that also has a specific intent element  So if we were to grant this, the any, any evident, any remedy would be with respect to those two counts only? That's correct. That's correct, Your Honor. Back to my question about the strength of the case against your client, whether or not he has diminished capacity. I think it's how do you show prejudice in this case? Is the prejudice that you're claiming the jury didn't get to consider this when they determined the amount of drugs, therefore, the sentence might not have been, is that the prejudice you're claiming? In a word, yes. That is where I think the prejudice is most acutely felt. As I think I've intimated earlier, I believe the diminished capacity evidence is relevant to other instances of specific intent that the court had defined, pardon me, the jury had defined. So, for instance, whether Mr. Branch intentionally entered into or willfully entered into this unlawful conspiracy in the first instance, although I think the government's evidence on that front was stronger and less susceptible to being brought to trial, I do believe that the diminished capacity defense is relevant to other instances of specific intent that the court had defined. So, for instance, whether the jury had intentionally entered into or willfully entered into this unlawful conspiracy in the first instance, although I think the  To prove conspiracy, the government needed to show that the defendant was capable of creating an agreement with only one other person in the conspiracy to do the actions that were charged. They do not need to show that he needed to understand the full scope of the conspiracy. They did not need to show that the defendant needed to have the capability to know all of the players within the conspiracy. But what about this foreseeability of drugs issue? Well, with regard to the foreseeability of drugs, what the jury needed to find was that this conspiracy involved the trafficking of more than 5 kilograms. It did not need to find anything in addition to that. And that's at ER page 1783, which is the verdict form. Or, excuse me, I think it's CR 1783, part of the criminal record itself. So for sentencing purposes, the jury only needed to find that there was more than 5 kilograms of drugs involved. That it was foreseeable that there would be more than 5 kilograms. That's correct. That he foresaw that there would be more than 5. That's correct. And the testimony at trial was overwhelming. More than 10 of Mr. Branch's co-conspirators testified. Mr. McCoy, who was Mr. Branch's partner as the leader in this conspiracy, testified against Mr. Branch. And from Mr. McCoy's testimony alone, we can get the 5 kilograms of cocaine. At one point, Mr. McCoy testified, as does a number of the other witnesses, to the police stopping one of the transport cars that transported cocaine from Fresno up to Portland as part of this drug trafficking. But the question is not whether there was more than 5 kilograms, but whether he knew there was more than 5 kilograms. And Mr. McCoy testified that he did, that Mr. Branch paid for a portion of the 11 kilograms that was transported in that one transport, and that at least half of those drugs or at least 4 kilograms of the drugs were specifically for Mr. Branch, but that Mr. Branch was aware of at least 7 to 8 kilograms that were transported that day. In addition to that, other witnesses testified. Drivers that were part of this conspiracy that were being paid directly by Mr. Branch to drive cocaine from Fresno to California, or I'm sorry, from Fresno to Portland in kilogram quantities, testified that they drove the number of times that they drove. In addition, the supplier of the cocaine in Fresno testified to the amount of drugs that he supplied. In addition, there were wiretaps. And he must have been connected to Mr. Branch. Yes. He did testify that he sold drugs directly to Mr. McCoy and Mr. Branch, that Mr. Branch was present during the transactions. In addition, there was wiretap evidence in this case of conversations between Mr. Branch and his cocaine supplier here in Portland, Mr. Spears, that captured deals about when they were going to buy and sell drugs between them, which was followed up by surveillance evidence and presented by a number of officers in this case. So the evidence against Mr. Branch here was overwhelming. Then let me ask this. Suppose we agree with Mr. Branch that his counsel should have brought a mental capacity defense. What is your strongest argument that mental capacity defense had no chance of succeeding? The experts themselves, Your Honor. And if you look at CR 1581, Dr. Kruger testified in a related motion. Mr. Branch attempted to suppress a proffer agreement that he had made with the government, the proffer that came out of that, on the grounds that he had a diminished capacity, that he couldn't make a binding agreement with the government because he didn't have the capacity to do that. And Judge Hagerty held a hearing on that. Dr. Kruger, one of defendant's experts, testified that, in fact, Mr. Branch knows right from wrong and understands the nature and consequences of his actions for purposes of criminal intent. That's supported also by the report of Dr. Lezik, which is at ER 51, in which she says that based on her examination of Mr. Branch, he was probably capable of alleged misbehavior at the time of their alleged commission. Now, the expert's testimony may have supported a duress defense. They did have evidence that showed that Mr. Branch was subject to manipulation, that he liked to please people, that he did have a less than average mental capacity. But the expert's own evidence shows that he was capable of creating an agreement, which is what's necessary for a conspiracy. So they did not support the diminished capacity defense. Thank you. In addition to that, the question here is one of ineffective assistance of counsel, whether counsel made a strategic choice or whether he made a mistake at the time of trial. And the crux of the argument the defendant puts forward is that defense counsel misunderstood Judge Hagerty's ruling here. That seems to be true. From my reading, I mean, I did read through all of his statements, and he did keep saying that the district court did not allow him to put on any mental health advantage. He said it three different times. That's correct, Your Honor. And we submit that that was actually the correct interpretation of Judge Hagerty's ruling. If you look at the text of the ruling itself, at ER-161. The problem is there were two rulings. There was an oral ruling and a written ruling. And the oral ruling seemed plainly to say that he could at least make it proper and try to do something else. The written ruling may have been written off the government's papers or something, and at the very last words are something that suggests that he couldn't put on the mental health experts. But it was at least unclear enough that if a lawyer wanted to do this, he could have gone in and said, Judge Hagerty, I don't really understand your ruling. I thought you said it was okay for me to do this. So I don't know. And, Your Honor, to address that, defense counsel did try to cross-examine at least one of the witnesses on the question of special education and Mr. Branch's history in that regard. And Judge Hagerty confirmed in his ruling on the government's objection to relevance he didn't let that evidence in. So Judge Hagerty disallowed that evidence that went to diminished capacity. When he was in fact a diminished capacity defense proffered in general. And so at that point, there was nothing that it went to. But that's sort of a different problem. Well, Your Honor, at that point, I mean, defense counsel could, up until the time of jury instructions, ask for a diminished capacity jury instruction. But Judge Hagerty did rule on the diminished capacity defense specifically in the order. As you're well aware, the text of the order says that he's, that Judge Hagerty granted the motion to strike all evidence regarding his alleged mental condition. And the meaning of that order is supported by Judge Hagerty's rulings on the relevance objections during trial. But in the oral statement of the judge, he kept mentioning duress. On 167, the Court would say that there would be, it would be inappropriate for Mr. Brans to offer any evidence that would support a duress defense. But if there are witnesses that they desire to call for other purposes, I think that would be permissible. Exactly what other purposes, I don't know, because I don't know what all their defense theories are. But it would be inappropriate to call any of the individuals on a duress defense. He said that twice. That's true. And that's because at that point, defense counsel was presenting the diminished capacity defense as part and parcel of a duress defense. But the government's briefing on this did address the diminished capacity evidence as something separate. And Judge Hagerty's ruling did as well, in which he stated, at least in the conclusion, that he was granting the motion to strike regarding the duress defense, evidence about the duress defense or his alleged mental condition. So Judge Hagerty does draw that distinction, at least in the order. Well, in the written order. But they sought clarification of that order. And the clarifications seem to say, refer to duress. And, Your Honor, that does go back to the argument that this was a reasonable decision in terms of tactics by the defense attorney to keep this evidence as part of a duress defense, in part because the evidence of the experts didn't support diminished capacity standing alone. If the Court has no further questions. Thank you very much. Thank you, Ms. Farley. As soon as your rebuttal can go straight to the point, what would be the bottom line of this Court's decision, as you would read, as you would, if you were writing it? The bottom line, I think, would be that defending can't withstand a prejudice problem here, that the evidence at trial was overwhelming. So to the extent that there was any prejudice, defense can't show that. Well, you're not really saying the evidence at trial was overwhelming. What you're saying is that the evidence countered any diminished capacity defense that was inconsistent with a diminished capacity defense. That's correct. But the evidence of Mr. Branch's involvement in the conspiracy here was substantial. Involvement with a sufficiently cognizant mental capacity. That's right. Because he dealt with more than 5 kilograms. He did. And because there were ñ there was testimony by a number of co-conspirators that testified directly to agreements that they made with Mr. Branch personally regarding the transport, the cooking, the trafficking of large quantities of cocaine. Thank you. Yes, sir. Why don't we give you two minutes for rebuttal. Ms. Iverwell would like to know what your response is to the 5-kilogram point. Thank you, Your Honor. The problem with the government's position is that it requires this Court to rely on and trust the testimony from the testifying former co-defendants. Those co-defendants did testify at trial, as counsel correctly stated, but they were also subject to impeachment for the fact that these are former drug dealers who have cut deals with the government in exchange for their agreement to testify for the government against Mr. Branch. But the mental capacity defense wouldn't go to challenging anything that happened in terms of whether or not there was X kilograms of cocaine involved in a deal at which Mr. Branch was present. It's not going to help with that. No, you're absolutely correct, Your Honor. But what the government is suggesting, I think, is that the jury could have gotten to the 5 kilograms by simply accepting as true the testimony from these testifying former co-defendants about, yes, there are drugs coming up from Mr. California and Mr. Branch was aware of that. There's nothing about the diminished capacity defense that would have impacted on that. No, Your Honor. I guess the point that I'm trying to make is this Court is being asked to decide in the first instance that those witnesses were credible and that the jury found those witnesses credible. So you're saying the court on the field decides whether a witness is credible? No. I think that's exactly the problem. I think this Court is, with all due respect, not in the best position to determine credibility of a particular witness. So is your point, to be specific, that the jury could have disbelieved that a — that the evidence of Branch's direct involvement in more than 5 kilograms of drugs, in which case it would have had to consider whether he nonetheless could have foreseen the involvement of more than 5 kilograms of drugs and he couldn't have done that? Yes, Your Honor. And if there were diminished capacity evidence, they could have concluded then as a third prong that he — if he wasn't there, he couldn't have anticipated it. I believe that's correct, Your Honor.  Thank you very much. Thank you. Thank you, counsel. It's a very useful argument and an interesting case. The United States v. Branch is submitted, and we will go on to Cody v. Carlson.
judges: Farris, Nelson D. W., Berzon